(78 South. 224)

BIRMINGHAM RY., LIGHT & POWER CO. v. MILBRAT. (6 Div. 461.)

(Supreme Court of Alabama. Dec. 20, 1917. Rehearing Denied March 23, 1918.)

1. MASTER AND SERVANT ⬤115(2)—DUTY OF MASTER—FIRE ESCAPE.
It is no part of the duty of a master to his servant, employed in a building properly constructed for ordinary business carried on within it, in the absence of statute requirement, to provide a means of escape from a fire which is not caused by his negligence.

2. STATUTES ⬤241(1) — PENAL STATUTES — STRICT CONSTRUCTION.
Penal statutes ought to be strictly construed, but they are not to be construed so strictly as to defeat the obvious intention of the Legislature, nor is the maxim to be applied so as to exclude from the operation of the statute cases which the words, in their ordinary acceptation, or in the sense in which the Legislature obviously used them, would comprehend.

3. HEALTH ⬤32 — FIRE ESCAPES — DUTY TO PROVIDE—"PROPRIETOR."
Code 1907, § 7095, providing that any owner, proprietor, or manager of any hotel, office building, school building, store, or manufacturing building, which is more than two stories high, who shall fail for six months after the adoption of the Code to provide fire escapes, shall be guilty of a misdemeanor, imposes the

---

[1] 197 Ala. 165.   [2] 200 Ala. 43.   [3] 197 Ala. 179.

duty of providing fire escapes for the enumerated buildings, not only upon the general owner of such buildings in the strict legal sense, but also in many cases on lessees who occupy and control the buildings, subjecting them to uses bringing them within the statutory purpose, for, though the strict literary meanings of "proprietor" are a possessor in his own right, an owner, a proprietary, or one who has the exclusive right or the legal title to something, the word is undoubtedly sometimes used in a broader sense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proprietor.]

**4. MASTER AND SERVANT ☞258(5)—INJURIES TO SERVANT—PLEADING—STATUTE.**

In a servant's action for injuries, the first count of the complaint alleged that defendant was engaged in the business of operating a street railway system, of manufacturing and selling electric current and gas, and of selling gas and electric stoves, and that in connection with the business it used a four-story brick building, being lessee of the building and the owner and proprietor of the store and of the business conducted there. *Held* that the count showed an exclusive occupancy, use, and control of the building by defendant so as fairly to authorize the conclusion that defendant was the owner or proprietor of the building in the sense intended by Code 1907, § 7095, providing that any owner, etc., who shall fail to install fire escapes, shall be guilty of a misdemeanor.

**5. MASTER AND SERVANT ☞287(8)—INJURIES TO SERVANT—AFFIRMATIVE CHARGE.**

In a servant's action for injuries, where, though the evidence showed defendant had a servant or servants who had general supervision of the business conducted in its building and of the employés therein engaged, it did not appear expressly or inferentially that defendant delegated to such superintendent duty to provide means of escape in case of fire (lack of which caused plaintiff's injury), the general affirmative charge should have been given for defendant on the count of the complaint charging plaintiff's injuries were caused by the negligence of defendant's superintendent.

**6. MUNICIPAL CORPORATIONS ☞603, 625 — ORDINANCE REQUIRING FIRE ESCAPES—CERTAINTY.**

An ordinance of the city of Birmingham requiring buildings more than two stories high, in part or in whole used for certain purposes, to be provided with standard fire escapes, etc., was not unconstitutional as unreasonable or uncertain in any of its terms.

**7. MUNICIPAL CORPORATIONS ☞592(2)—ORDINANCE REQUIRING FIRE ESCAPES—CONFLICT WITH STATUTES.**

Such ordinance was not in conflict with Code 1907, §§ 7095, 7096, providing that any owner, etc., of any hotel, office building, etc., who shall fail to provide fire escapes, shall be guilty of a misdemeanor, etc.

**8. MUNICIPAL CORPORATIONS ☞603—INSTALLATION OF FIRE ESCAPES—DUTY OF LESSEE —ORDINANCE.**

Under ordinance of the city of Birmingham, requiring that all buildings over two stories, in whole or in part used for certain purposes, be provided with fire escapes, a street railway, lessee of a four-story building, wherein it was engaged in the business of operating its railway, manufacturing, and selling electric current and gas, etc., was required to equip the building with fire escapes in reasonable compliance with the requirements of the ordinance.

**9. MASTER AND SERVANT ☞285(5), 286(16), 289(15)—INJURIES TO SERVANT—NEGLIGENCE —CONTRIBUTORY NEGLIGENCE — QUESTIONS OF FACT.**

In a servant's action for injuries when forced to jump from a fourth story window in the absence of fire escapes, whether defendant failed to comply with the city ordinance requiring installation of escapes, and whether the failure rendered necessary plaintiff's escape by jumping, also whether plaintiff was negligent, *held* questions of fact for the jury.

**10. TRIAL ☞237(1) — INSTRUCTION—BURDEN OF PROOF.**

In a servant's action for injuries when the absence of fire escapes forced him to jump from a fourth story window, defendant's request that if, after a fair consideration of the evidence, the jury's minds were left in a state of confusion as to whether or not plaintiff was entitled to recover, they should find for defendant, was properly refused.

**11. TRIAL ☞252(11) — INSTRUCTION — EVIDENCE.**

Where the evidence showed without dispute, and the jury clearly understood, that defendant was not the technical legal owner of the building, defendant's request that it was not the owner of the building which it occupied on the occasion of the fire was properly refused.

**12. TRIAL ☞242—INSTRUCTION—MISLEADING CHARACTER.**

Defendant's request that, no matter whether the evidence showed that the fire escape was adequate or not, plaintiff could not complain if the jury believed from the evidence that he made no attempt to use the escape, was properly refused as misleading; it being a question for the jury whether plaintiff had an opportunity to safely use the escape as constructed and located.

**13. MASTER AND SERVANT ☞291(4)—ACTION FOR INJURIES—INSTRUCTION—RELEVANCY.**

Defendant's request that there was no evidence that the fire originated by reason of any negligence on its part was properly refused as irrelevant to the issues made by the pleadings.

**14. TRIAL ☞204—INSTRUCTIONS—EVIDENCE.**

Courts are not required to give instructions that there is or is not evidence of a certain fact.

**15. MASTER AND SERVANT ☞293(7)—ACTION FOR INJURIES—INSTRUCTION.**

In a servant's action for injuries when forced to jump because there was no proper fire escape, plaintiff's written charge that it was defendant's duty to comply with the laws of the state and the ordinances of the city in force at the time of the fire with reference to providing fire escapes, etc., and that failure to do so would be negligent, was properly given under the facts in evidence.

**16. TRIAL ☞256(2)—INSTRUCTIONS—REQUEST —EXPLANATION.**

If plaintiff's request was misleading in tendency, explanatory charges should have been requested.

**17. MASTER AND SERVANT ☞288(7)—INJURIES TO SERVANT—ASSUMPTION OF RESULT— FIRE ESCAPE.**

Where a servant knew of the insufficiency of the fire escape on the master's premises, as to its kind or location, he did not, as a matter of law, assume the risk of being injured by a fire, unless he appreciated or had notice of the danger resulting from the inefficiency of the escape.

Somerville and Gardner, JJ., dissenting in part.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Alphonse Milbrat, pro ami, against the Birmingham Railway, Light & Power Company. From judgment for plaintiff, defendant appeals. Reversed and cause remanded.

Plaintiff was injured by jumping from a window of the fourth floor of a burning building, leased and occupied by defendant company in the city of Birmingham as its place of business. Plaintiff was employed by defendant, and engaged in the performance of his duties at the time. Count 1 of the complaint is as follows:

Plaintiff, a minor, who sues by his next friend, claims of defendant * * * the sum of * * * as damages for this: That heretofore, on, to wit, the 19th day of May, 1914, defendant was engaged in the business in the city of Birmingham of operating a large and extensive electric street railway system, of manufacturing and selling electric current and gas, of selling gas and electric cook stoves and ranges, * * * and in connection with said business used and occupied a large four-story brick building and basement, located on the corner of First avenue and Twenty-First street in said city, said building fronting on First avenue and extending back a uniform width to an alley. Defendant was a lessee of said building on said date, and was the owner and proprietor of the store, and of the business conducted therein. That the grade floor of said building was used mainly as a floor for the display and sale to the public of the said goods, wares, and merchandise, and gas and electric current hereinabove described. That the second, third, and fourth floors of said building were partitioned into offices, and were occupied by the superintendents, bookkeepers, etc., and other employés of defendant. That on said date plaintiff was an employé of defendant, and was engaged in and about the duties of his said employment on the fourth floor of said building. That it then and there became and was the duty of defendant to have securely fixed and conveniently arranged good and sufficient fire escapes or ladders for said building so as to be accessible to plaintiff in case of fire in said building. That on said date, in the daytime, a fire occurred in said building by which said building was burned and totally destroyed. That at the time of said fire plaintiff was on the fifth floor of said building, and, in order to save and escape with his life, was compelled to jump from a window on the fourth floor in the rear of said building to the rock paved alley below, and received the following injuries: [Here follows catalogue.] Plaintiff avers that defendant negligently failed to provide and equip said building with good and sufficient fire escapes, as it was its duty to do, and as a proximate consequence of which plaintiff received and suffered the injuries and damages herein set out.

Count 2 charges that by reason of said fire plaintiff was burned and caused to jump from said building, and "that defendant negligently failed to furnish him with a reasonably safe place in which to do and perform the work for defendant which he was employed to do."

The fourth count charges that plaintiff's injuries were caused by reason and as a proximate consequence of the negligence of the person in the service or employment of defendant who had superintendence intrusted to him by defendant, while in the exercise of such superintendence by said person, whose name is unknown to defendant, knowing that employés of defendant were, or would likely be, in said upper fourth story of said building engaged in or about working for defendant, negligently failed to furnish or provide proper and sufficient means of escape from said upper floor for the use of said employés upon said upper floor, in the event they should be endangered on account of fire.

Count 5 charges:

"That said building was an office building, and defendant had been in possession of and using said building for more than six months * * * and wrongfully failed to provide good and sufficient fire escapes," etc.

Count 6 charges the breach of an ordinance of the city of Birmingham in words as follows:

"Sec. 258. Fire Escapes. All buildings, more than two stories high in any part, or in whole, now or hereafter used in any part, or in whole, as a public or private building, public or private institution, sanatorium, surgical institute, asylum, schoolhouse, theater, hall, office, dormitory, place of assemblage, or public resort, store or store building, mills or manufacturing building, and all buildings used as a factory, mercantile or other establishment, and every public or private hotel, apartment, tenant or flat building, boarding house, lodging or sleeping house, shall be provided with standard fire escapes, or other fire escapes, equally as good, as hereinafter prescribed, to be located as remote from stairs as possible, and shall be easily accessible to all the occupants of the building without passing through living or sleeping rooms, or rooms which have locks or bolts that will fasten or be otherwise obstructed and with the proper signs and red letters denoting the location of fire escapes."

And plaintiff avers that defendant negligently failed to provide said fourth floor of said building with such standard fire escape or other fire escapes equally as good as provided in said ordinance which were easily accessible to the occupants of said fourth floor without passing through rooms which had locks or bolts that would fasten, and negligently failed to provide said floor with proper signs and red letters denoting the location of the fire escapes, and as a proximate consequence thereof plaintiff suffered and received the injuries and damages set out in the first count of the complaint.

Plea 2 sets up contributory negligence, in that plaintiff negligently remained in said building after knowledge of the fire, and of the danger of remaining, when with reasonable diligence he could have escaped.

Pleas 4 and 6 set up assumption of risk by plaintiff, in that he remained in the service of defendant an unreasonable length of time with knowledge of the dangerous conditions complained of. Demurrers were overruled to each count, and the demurrer was sustained to plea 6.

At plaintiff's request the following charge was given:

I charge you, gentlemen, that it was the duty of defendant to comply with the laws of the state of Alabama, and the ordinances of the city of Birmingham, in force at the time of the fire, with reference to providing fire escapes or lad-

ders on the building occupied by defendant, and which were destroyed by fire, and a failure to do so would be negligence in and of itself.

Defendant requested instructions to find for defendant under each count of the complaint, and they were severally refused. The defendant also requested the following instructions, which were refused:

E. If, after a fair consideration of all the evidence, your minds are left in a state of confusion as to whether or not plaintiff was entitled to recover, you should find for defendant.

H. The defendant was not the owner of the building which it occupied on the occasion of the fire.

K. No matter whether the evidence showed that the fire escape was adequate or not, plaintiff cannot complain thereof, if you believe from the evidence that he made no attempt to use said fire escape.

L. There is no evidence in this case that the fire originated by reason of any negligence on the part of defendant.

M. The court charges the jury that the law does not impose on a tenant of a building the duty of constructing an exterior escape way from the building.

Tillman, Bradley & Morrow and E. L. All, all of Birmingham, for appellant. Morris Loveman and F. E. Blackburn, both of Birmingham, for appellee.

SOMERVILLE, J.    [1] It is well settled that:

"It is no part of the duty of a master to his servant, employed in a building properly constructed for ordinary business carried on within it, in the absence of a statute requirement, to provide a means of escape from a fire which is not caused by his negligence." 26 Cyc. 1114 (B), and cases cited.

Section 7095 of our Code is as follows:

"Any owner, proprietor, or manager of any hotel, office building, school building, store, or manufacturing building, which is more than two stories high, now erected, who shall fail for six months after the adoption of this Code to have securely fixed and conveniently arranged so as to be accessible to persons lodging in, working in, or occupying such building, in case of fire in such building, good and sufficient fire escapes or ladders for each story of said building, shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than fifty nor more than five hundred dollars, and may be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months, for each day so continued."

It is insisted for appellant that, being a penal statute, it must be strictly construed, especially with reference to the classes of persons who are to be subjected to its operation. The argument is that the words "owner, proprietor, or manager," do not, and under a fair construction cannot, include the mere lessee of a building, and that the statute applies the quoted words to the building only, and not to the business conducted within the building.

Similar statutes are to be found in many of the states, and they have been frequently before the courts for construction. Arms v. Ayer, 192 Ill. 601, 61 N. E. 851, 58 L. R. A. 277, 85 Am. St. Rep. 357; Yall v. Snow, 201 Mo. 511, 100 S. W. 1, 10 L. R. A. (N. S.) 177, 119 Am. St. Rep. 781, 9 Ann. Cas. 1161; John-son v. Snow, 201 Mo. 450, 100 S. W. 5; Schott v. Harvey, 105 Pa. 222, 51 Am. Rep. 201; Lee v. Smith, 42 Ohio St. 458, 51 Am. Rep. 839; Steiert v. Coulter, 54 Ind. App. 653, 102 N. E. 113, 103 N. E. 117; 4 Neg. Comp. Cas. Ann. 561; Landgraf v. Kuh, 188 Ill. 484, 59 N. E. 501. Our statute seems to be materially different from all of the others, especially in its designation of the classes of persons upon whom the duty of provision is visited, and in the classes of buildings included within the provision. While, therefore, some of the reported cases might be persuasive, none of them supplies an authority directly in point.

[2] It is of course true that penal statutes are to be strictly construed, but they are not to be construed so strictly as to defeat the obvious intention of the Legislature; nor is the maxim to be so applied as to exclude from the operation of the statute cases which the words, in their ordinary acceptation, or in the sense in which the Legislature obviously used them, would comprehend. Walton v. State, 62 Ala. 197. So it has been said that it is the duty of the court, while disclaiming the right to extend a criminal statute to cases out of its letter, to apply it to every case clearly within the mischief, or cause of making it, where its words are broad enough to embrace such case. Huffman v. State, 29 Ala. 40. This must be regarded as especially true in the case of all those statutes which are designed for the protection of human life by supplying conditions of safety or removing conditions of danger.

[3] In ordinary speech the "owner" of a building is the person who has the title. Evidently, by the use of the additional words "proprietor or manager" the Legislature intended to extend the liability to persons other than the merely legal owners of the buildings designated. Worcester defines "proprietor" as "a possessor in his own right; an owner; a proprietary." The Century Dictionary defines it as "one who has the exclusive right or the legal title to something; an owner." These are the strict meanings of the word in a literary sense. But it is undoubtedly sometimes used in a broader sense, and the courts have several times held that in particular statutes it includes a lessee—the person occupying the premises—as well as the owner. Commonwealth v. Skatt, 162 Mass. 219, 38 N. E. 499; Winsor v. G. S. & L. Society, 31 Wash. 365, 72 Pac. 66; Pierce v. Concord R. R. Co., 51 N. H. 590, 591.

So, also, even the word "owner" is sometimes used in statutes as including the person in possession and control of the property, though he be not the legal owner. Tompkins v. Augusta, etc., R. Co., 21 S. C. 420, 431; Laflin v. Svoboda, 37 Neb. 368, 55 N. W. 1049, 1050; Hemm v. Williamson, 47 Ohio St. 493, 25 N. E. 1, 2; Shultz v. Griffith, 103 Iowa, 150, 72 N. W. 445, 446, 40 L. R. A. 117; Hartford v. Brady, 114 Mass. 466, 470, 19 Am. Rep. 377; Keith v. McGuire, 170

Mass. 210, 48 N. E. 1090; Hornbein v. Blanchard, 4 Colo. App. 92, 35 Pac. 187, 188; Frazier v. State, 18 Tex. App. 434, 441.

A "manager" is one who directs or controls, and may, of course, include the owner's managing agent as well as the owner himself.

The foregoing considerations easily lead us to the conclusion, in view of the manifest purpose of the statute quoted, that the Legislature intended to impose the duty of providing fire escapes for the buildings enumerated, not only upon the general owners of such buildings in the strict legal sense, but also in many cases upon lessees who occupy and control the buildings, and subject them to the uses which bring them within the statutory description and purpose. This accords with the views of Justice Sayre adopted by this court in the case of B. R., L. & P. Co. v. Buff, Adm'r, 77 South. 388,[1] a case growing out of the same fire and counting upon substantially the same causes of action.

[4] Although the complaint does not in terms allege that defendant was the "owner, proprietor, or manager" of the building in question, we think the first count does show such an exclusive occupancy, use, and control thereof by defendant as to fairly authorize the legal conclusion that defendant was the owner or proprietor of the building in the sense and for the purposes intended by the statute, and, we may here add, the evidence clearly supports the allegations in this respect. We conclude therefore that count 1, as amended, was not subject to the demurrer interposed.

Counts 2 and 4 are substantially identical with counts 1 and 4 in B. R., L. & P. Co. v. Buff, supra, and, for the reasons there stated, the demurrers to these counts were properly overruled.

Count 5 is identical with count 5 in the Buff Case, as to which we held that the demurrer should have been sustained for that it did not appear either by formal allegation, or by facts alleged, that defendant was the "owner, proprietor, or manager" of the building in the sense intended by the statute. But, in view of the fact that the issues of duty and negligence were the same under counts 1 and 5, and the evidence showing without dispute that defendant was the owner or proprietor of the building in the sense of the statute, the error of overruling the demurrer was without prejudice to defendant.

[5] With respect to count 4—the superintendent's count—we may as well say here as later that, although the evidence shows that defendant had a servant or servants who had general supervision of the business conducted in the building and of the employés engaged therein, yet it does not appear either expressly or inferentially that defendant delegated to such superintendent the duty of providing means of escape in case of fire, and the general affirmative charge should have been given for defendant on this count as requested.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SAYRE, and THOMAS, JJ., hold that the refusal to so instruct the jury was error requiring the reversal of the judgment. The writer, with whom GARDNER, J., concurs, is of the opinion that, as the duty in question was nondelegable, and the liability of defendant was exactly the same whether considered directly as in other counts, or through the medium of its superintendent or other servant, and the record clearly shows that defendant was not prejudiced, by the failure of the trial judge to charge out this count as requested, the judgment should not be reversed therefor.

One count of the complaint—No. 6—is framed with reference to a city ordinance of Birmingham, which will be found in the reporter's statement. This ordinance is attacked as unconstitutional because of its unreasonableness, and as being void on account of alleged inconsistency with the state statutes above referred to.

[6, 7] We do not think it is unreasonable or uncertain in any of its terms, nor does it conflict with sections 7095 and 7096 of the Code. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescriptions. Adler v. Martin, 179 Ala. 97, 113, 59 South. 597; Borok v. Birmingham, 191 Ala. 75, 67 South. 389, Ann. Cas. 1916C, 1061; Turner v. Lineville, 2 Ala. App. 454, 56 South. 603. Moreover, the general power to require buildings to be equipped with fire escapes, when deemed necessary, is expressly conferred on municipalities by section 1264 of the Code.

[8] It will be noticed that the requirement of the ordinance—quite different from the statute—is based upon the use of the buildings, and not merely upon ownership or management. Regardless of the inherent character or design of the building as fashioned or intended by the owner, the use of the building imposes the duty of supplying the specified protection, whether upon the owner, manager, or tenant in possession. Such, we think, is the manifest intention and scope of the ordinance. We hold therefore that the defendant company, as the occupying tenant who subjected the building to its own use—whether as an office building or business establishment where its employés performed their service—was under the legal duty of equipping the building with fire escapes in reasonable compliance with the requirements of the ordinance.

[9] Whether it did so, and whether its failure to do so rendered necessary plaintiff's es-

[1] Ante, p. 94.

cape by jumping from a window to his hurt, were under the evidence questions to be determined by the jury. So, also, whether, under the circumstances shown, plaintiff's conduct with respect to the time and manner of his exit from the burning building was negligent or otherwise was a question of fact for the jury.

Under count 2, charging failure to furnish a reasonably safe place to work in, whether with reference to ordinary exits from the fourth floor, or to the statutory provisions for fire escapes, we hold as in the Buff Case, supra, that the issues were properly submitted to the jury.

[10] Charge E was properly refused to defendant. A. G. S. R. R. Co. v. Robinson, 183 Ala. 265, 62 South. 813, overruling on that point B. R., L. & P Co. v. Saxon, 179 Ala. 136, 59 South. 584.

[11] Charge H was properly refused because, as already pointed out, °ownership, within the meaning and operation of the statute, could include a lessee in control of the building as defendant is shown to have been. Moreover, the evidence showed without dispute, and the jury clearly understood, that defendant was not the technical legal owner, if that was the only meaning intended to be conveyed by the charge.

[12] Charge K was properly refused as misleading, since it was a question for the jury whether plaintiff had an opportunity to safely use the fire escape as it was constructed and located, or whether his omission to do so under the circumstances was negligent. His failure to attempt to use it may have been due to its inaccessibility by reason of improper location or construction, and this aspect of the matter is entirely ignored by the charge.

[13, 14] Charge L was properly refused as irrelevant to the issues made by the pleadings, and because courts are not required to give instructions that there is or is not evidence of a certain fact.

Charge M was properly refused because the statute and ordinance may apply to tenants as well as owners.

[15, 16] Written charge 5, given for plaintiff, was properly given under the facts in evidence, and is. not subject to the criticisms offered. If misleading in tendency, explanatory charges should have been requested.

The point is urged by appellant that no proof was made that the ordinance was in force at the time of the fire. Counsel is mistaken in this, as the testimony of the witness Matthews shows.

[17] Conceding, without deciding, that a defendant's breach of duty imposed by express command of a statute or ordinance may be met by a plea of plaintiff's assumption of the risk (as to which the authorities are in sharp conflict, 26 Cyc. 1180, II), yet plea 6 is defective in not alleging that plaintiff knew, or should have known, or appreciated, the risks of remaining in defendant's employment under the conditions described. It is not enough that plaintiff knew of the insufficiency of the fire escape, aŝ to its kind or location. He did not as a matter of law assume the risk of being injured by a fire in the building, unless he appreciated or had notice of the danger to him resulting from the inefficiency of the fire escape. West Pratt Coal Co. v. Andrews, 150 Ala. 368, 375, 43 South. 348; So. Ry. Co. v. McGowan, 149 Ala. 440, 43 South. 378; Bryant v. A. G. S. R. R. Co., 155 Ala. 368, 46 South. 484.

For the single error noted above the judgment will be reversed and the cause remanded.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SAYRE, and THOMAS, JJ., concur. SOMERVILLE and GARDNER, JJ., dissent.

McCLELLAN, J. (concurring). My concurrence in the conclusion prevailing on this appeal is explained, and, in a measure, qualified, in the writer's concurring opinion filed in B. R., L. & P. Co. v. Buff.